J-S17007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WALTER BROWN JR. | |
| Appellant | No. 29 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 18, 2020
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0002487-2019

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 05, 2021**

Appellant Walter Brown Jr. appeals from the November 18, 2020, judgment of sentence entered in the Court of Common Pleas of Berks County ("trial court"), following his jury convictions for burglary, criminal trespass, and theft by unlawful taking or disposition.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As recounted by the trial court:

> On June 4, 2018, employees of Distribution Services Company ("DSC") discovered that some power tools batteries and a charger were missing from a building on the property.  Upon this discovery, the employees checked recorded video footage from security cameras that were installed on the property and found that an individual unlawfully entered the building and stole the battery packs and charger, as well as a pair of work gloves.  The employees then contacted a nearby police officer who reviewed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(4), 3503(a)(1)(ii), and 3921(a), respectively.

the security footage with the employees. The officer recognized the individual on the video recording as Appellant, with whom the officer had prior contact. The officer notified the affiant [(another officer)] in this matter, who compared screenshots from the security footage with Appellant's driver's license photograph, and determined that Appellant was the perpetrator. Appellant was thereafter charged with [the above-mentioned crimes].

At trial, the Commonwealth first called George Dronick ("Dronick"), the owner of DSC, located at 1601 North Sixth Street in Reading, Pennsylvania ("the Property"), as a witness. Dronick testified that DSC provides distribution of rock salt for American Rock Salt Company and described the Property as a large paved area of several acres upon which is located a scale house ("the Scale House"), a garage, and several other ancillary buildings.

On June 3, 2018, Dronick indicated that the Scale House was locked, and that video surveillance was installed, including approximately eight security cameras, two of which were located inside the Scale House. Dronick continued that the security cameras were all connected to a central recording unit and that, on June 3, 2018, the cameras and central unit were in proper operating condition and recording.

The Commonwealth presented portions of the surveillance recording from June 3, 2018, during Dronick's testimony. The First clip from the video footage was from just outside the Scale House and depicted an individual dressed in a hooded sweatshirt and jeans approach the single entrance to the Scale House, which was locked. The next video excerpt was time-stamped approximately fifteen minutes later, and the same individual was seen leaving the Scale House with a bag containing something. Dronick testified that he did not know the individual shown in the video, nor did he give the perpetrator permission to enter the Scale House or take anything from inside. The Commonwealth then presented video surveillance footage from inside the Scale House in which the intruder is seen walking through the Scale House.

Dronick was notified by several of his employees that a burglary had occurred and that items from inside the Scale House were missing. Upon his inspection of the Scale House, Dronick noticed evidence that the door to the Scale House had been pried open. When he reviewed the surveillance video, Dronick took an inventory of items inside the Scale House and found that several

cordless power tool batteries and charger, valued in excess of $500.00, were missing, as well as some beer from the refrigerator.

On cross-examination, Dronick acknowledged that he did not know the individual seen on the surveillance video burglarizing the Property. Likewise, Dronick admitted that he did not know Appellant.

Brandon Weaver ("Weaver"), an employee of DSC, testified that on June 4, 2018, he arrived at the Property with his brother-in-law, Jordan Miranda ("Miranda"), but did not immediately notice anything unusual. Weaver stated that he went to look for the batteries and found that they were missing. After looking around the Scale House, Weaver checked the security cameras and discovered that the batteries had been stolen. Weaver did not recognize the person seen in the surveillance video burglarizing the Scale House. Weaver and Miranda then flagged down a Reading Police Officer, who then viewed the security camera footage.

Officer Christian Morar ("Officer Morar"), a police officer with the Reading Police Department, testified that on June 4, 2018, he was on regular patrol when he was waved down by two employees of DSC. Upon arriving at the Property, Officer Morar spoke with the employees, and then briefly viewed some of the surveillance footage. Officer Morar immediately recognized the individual depicted on the surveillance footage as Appellant with whom Officer Morar had dealt with approximately two weeks prior to the burglary. Officer Morar then contacted Officer Adam Babbitt.

On cross-examination, when asked whether there were any distinguishing features of Appellant's appearance that he could remember, Officer Morar responded that he recognized Appellant's gray beard. Officer Morar then continued that he recalled no other distinguishing features of Appellant from his previous encounter.

Officer Adam Babbitt ("Officer Babbitt"). of the Reading Police Department, testified that he reviewed the surveillance video during his investigation of the case and spoke with Officer Morar about his observations. Officer Babbitt then returned to the station and pulled Appellant's driver's license photograph from the N.C.I.C. database and compared it with the video images he reviewed from the security cameras. The Commonwealth

introduced Appellant's PennDOT driver's license photograph into evidence at trial, and it was published to the jury. Officer Babbitt observed that the photograph from Appellant's driver's license was taken more than a year prior to the burglary. However, when comparing Appellant's driver's license photograph with some screenshots from the surveillance video footage, Officer Babbitt identified Appellant as the individual in both.

Officer Babbitt admitted on cross-examination that Appellant, in his driver's license photograph, had a substantially shorter beard than the individual represented on the security camera footage. Officer Babbitt also acknowledged that he did not request that any DNA evidence collected, and no fingerprints were taken from the scene. Officer Babbitt explained that the perpetrator wore gloves during the burglary, but did acknowledge that, based on the video footage, the burglar did not have gloves on the entire time.

At the conclusion of the trial, the jury found Appellant guilty of all charges. The same day, November 18, 2020, this court sentenced Appellant on the burglary conviction to a period of incarceration of three to six years in a state correctional facility. The remaining charges merged for sentencing purposes.

On November 25, 2020, Appellant, through trial counsel, filed post-sentence motions challenging the weight and sufficiency of the evidence as to all charges and modification of sentence. Th[e trial] court denied Appellant's post-sentence motions by order dated December 1, 2020.

Trial Court Opinion, 2/9/21, at 1-4 (record citations, footnotes and unnecessary capitalizations omitted). Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises two issues for our review.

[I.] Whether the evidence was insufficient to support the conviction of burglary, criminal trespass, and theft by unlawful taking as there was insufficient evidence that Appellant was the perpetrator?

[II.] Whether the verdicts of guilt went against the weight of the evidence?

- 4 -

Appellant's Brief at 6.

At the core, Appellant's issues are interrelated as they both challenge his identification as the perpetrator.[2] In this regard, he first contends that the officers' trial testimony was unreliable and incredible, as it revealed only "general physical characteristics of a beard" for purposes of identifying Appellant. *Id.* at 12. We treat this contention as challenging the weight and credibility determination of the fact-finder.

As we have explained:

> On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), *appeal denied*, 954 A.2d 575 (Pa. 2008). "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008)).

---

[2] Although he couched his first issue as one implicating the sufficiency of the evidence, Appellant does not identify any element of any crime upon which the Commonwealth's evidence was insufficient.

Instantly, Appellant essentially attacks the jury's weight and credibility determinations, and invites us to accept his version of events. We decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence. *See* *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact."). As the jury was free to believe all, part or none of the Commonwealth's evidence, Appellant's claim lacks merit.

Next, Appellant challenges his in-court identification by Officer Morar. We, however, decline to address this issue because Appellant failed to preserve it for our consideration. As we have often stated, with respect to preserving a challenge to the admission or exclusion of evidence, Rule 103 of the Pennsylvania Rule of Evidence provides in pertinent part:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
> (1) if the ruling admits evidence, a party, on the record:
>
> (A) makes a timely objection, motion to strike, or motion *in limine*; and

> (B) states the specific ground, unless it was apparent from the context[.]

Pa.R.E. 103(a)(1). In Pennsylvania, it is well-settled that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review. *See* Pa.R.A.P. 302(a); *see also Commonwealth v. Montalvo*, 641 A.2d 1176, 1185 (Pa. Super. 1994) (citation omitted) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial."). Failure to do so results in waiver of that issue on appeal. *See* Pa.R.A.P. 302(a); *see also Commonwealth v. Schoff*, 911 A.2d 147, 158 (Pa. Super. 2006).

Instantly, the trial transcript reveals that Appellant's counsel failed to object to Appellant's in-court identification by Officer Morar.

Q. So you knew this person prior to June 3rd of 2018?

A. Yes.

Q. Did you know his name at the time, at the time you watched the video, did you know his name?

A. I did.

Q. And what was his name?

A. Walter Brown.

Q. How – how far before June 3rd of 2018 did you have prior dealings with –

A. I would say maybe two weeks.

Q. Two weeks before?

A. Yeah.

Q. Okay. Officer, I'm going to ask you to look around the room today and if you see – if you see Walter Brown in the courtroom?

A. I do.

Q. You do?

A. Yes.

Q. Could you point to him? You can stand up and point to him and describe what he's wearing right now.

A. He is wearing an off-white buttoned-collar shirt (indicating).

[Assistant District Attorney]: I'll ask that the record reflect that the witness has identified [Appellant], Walter Brown.

[The trial court]: It shall.

Q. Even though the person you identified right now has a face mask on, does that impair your ability to have the identification without any doubt?

A. Yes, it doesn't impair. I'm sorry. It doesn't, no.

Q. Is that him? Do you have any doubt that that is the person in the video?

A. No.

Q. Even with the face mask on today?

A. Yeah.

N.T. Trial, 11/18/20, at 35-36. Accordingly, we conclude that Appellant's evidentiary challenge to his in-court identification by Officer Morar is waived. *See Commonwealth v. Ballard*, 80 A.3d 380, 400 (Pa. 2013), (holding appellant's arguments were waived because appellant failed to object at trial), *cert. denied*, 134 S. Ct. 2842 (2014); *see also* Pa.R.E. 103(a).

In sum, Appellant neither obtains relief on his weight claim that the officers' trial testimony was unreliable and incredible, nor on his evidentiary challenge to the in-court identification by Officer Morar.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/05/2021